1  Christopher W. Sweeney (SBN 143217)
   LAW OFFICES OF CHRISTOPHER W. SWEENEY
2  1300 Oliver Road, Suite 300
   Fairfield, CA  94534
3  Telephone: (707) 435-1244
   Facsimile:  (707) 435-1245
4  Email: cwslaw@comcast.net

5  Attorney for Plaintiff
   E.B. STONE & SON, INC.,
6  a California corporation

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10               SACRAMENTO DIVISION

11                        ***

12  E.B. STONE & SON, INC., a California      )    Case No.
    corporation                              )
13                                           )    COMPLAINT FOR:
              Plaintiff,                     )    (1) BREACH OF CONTRACT;
14                                           )    (2)  NEGLIGENCE;
         vs.                                 )    (3) BREACH OF IMPLIED
15                                           )        WARRANTY OF
    THE IRWIN-HODSON COMPANY, and DOES )          MERCHANTABILITY;
16  1 through 50, inclusive,                 )    (4) BREACH OF IMPLIED
                                             )        WARRANTY OF FITNESS FOR
17            Defendants.                    )        PARTICULAR PURPOSE;
    _____ )    (5)  NEGLIGENT
18                                                    MISREPRESENTATION; AND
19                                               (6)  CONTRACTUAL AND EQITABLE
                                                     INDEMNIFICATION AND
20                                                   DECLARATORY RELIEF
21
22                                               **DEMAND FOR JURY TRIAL**
23       COMES NOW Plaintiff, E.B. STONE & SON, INC. (hereinafter "Plaintiff" or "E.B.

24  STONE") and alleges against Defendant THE IRWIN-HODSON COMPANY (hereinafter

25  "Defendant" or "IRWIN-HODSON") as follows:

26                        **JURISDICTION AND VENUE**

27       1.      This court has original jurisdiction over the parties to this action under 28 U.S.C.

28  Section 1332, in that it is a civil action between citizens of different states in which the matter in

                                    1

1  controversy exceeds, exclusive of costs and interests, seventy-five thousand dollars ($75,000.00).

2  Venue is proper in this judicial district under 28 U.S.C. Section 1391(b)(2) as the district in which a

3  substantial part of the events giving rise to the claims occurred.

4                                                  **PARTIES**

5        2.      Plaintiff, E.B. STONE & SON, INC., is, and at all times herein mentioned was, a

6  corporation organized and existing under the laws of the State of California, with its principal place

7  of business located within the State of California, County of Solano, City of Fairfield.  Plaintiff is a

8  merchant engaged in the business of the manufacture, distribution and sale of custom formulated

9  plant foods, lawn foods, organic soils and soil amendments, among other products.

10       3.      Plaintiff is informed and believes and based thereon alleges that Defendant IRWIN-

11 HODSON is and at all times herein mentioned was, a corporation organized and existing under the

12 laws of the State of Oregon, with its principal place of business in Portland, Oregon, doing business

13 in the State of California, County of Solano by, among other things, shipping and delivering its

14 products to Plaintiff's manufacturing facility located in Solano County, California.   Defendant is a

15 merchant engaged in the business of, among other things, the manufacture and printing of boxes

16 and other packaging materials for sale to, and use by commercial manufacturers in packaging their

17 products for sale to consumers throughout the United States.  Defendant purports to consummate

18 sales of its products throughout the United States and into Canada.

19                                      **NATURE OF THE ACTION**

20       4.      Defendant IRWIN-HODSON manufactured, sold and delivered boxes and packaging

21 materials to Plaintiff at its Fairfield, California facility for use in packaging Plaintiff's plant foods,

22 lawn foods, organic soils and soil amendments, among other products for sale to Plaintiff's

23 customers, which boxing and packaging materials were defective, nonconforming, unmerchantable,

24 unfit for the particular purpose, and/or negligently manufactured by Defendant, thus resulting in

25 damages to Plaintiff in an amount to be determined at trial according to proof, and reasonably

26 estimated to be in excess of $300,000.00, plus interest.

27 //

28 //

## GENERAL ALLEGATIONS

5.     Plaintiff is a manufacturer and distributor of custom formulated plant foods, lawn foods, organic soils and soil amendments, among other products, from its manufacturing facilities located in Fairfield, California.  Plaintiff is informed and believes and based thereon alleges that at all relevant times herein mentioned, defendant IRWIN-HODSON was engaged in the business of, among other things, the manufacturing and printing of boxes and other packaging materials for sale to, and use by commercial manufacturers in packaging their products for sale to consumers throughout the United States.

6.     In 2009, one of Plaintiff's largest retail customers indicated that it wanted to begin displaying plaintiff's products outside its' retail facilities on the customer's plant tables.  At that time, Plaintiff did not have packaging that would allow the storage and display of its products outside, as the packaging materials comprising Plaintiff's boxes neither weather resistant nor ultraviolet ("UV") light stable.  Working with its designer in Portland, Oregon, Plaintiff began a search for a printer and box manufacturer who could develop boxes that would be more durable when exposed to outside weather conditions.  Plaintiff's designer was familiar with many of the printers on the West Coast and their press capabilities, and ultimately sought assistance from Dennis Winkleman of Insight Print Management, a representative of IRWIN-HODSON.  Winkleman advised that IRWIN-HODSON had recently installed a new printing press that gave them "unparalleled capabilities" on the West Coast for UV inks and coatings for product packaging, and arranged a meeting with Plaintiff's representative in or about July 2009 at Defendant's facility in Portland.

7.     Present at the first meeting in or about July 2009 were Plaintiff's representative, Christopher Totten, Plaintiff's designer, Anton Kimball, and Defendant's representatives Dennis Winkleman, Ken Kozel, and Kevin Ashe.  At this first meeting, and in all subsequent discussions with Defendant's representatives regarding Plaintiff's packaging needs, Plaintiff's representatives very clearly discussed the requirement that Plaintiff's boxes be both weather resistant and UV light stable, as the products would be displayed outside and exposed to the elements.  During the first meeting in July 2009, Defendant's representatives demonstrated how their proprietary coating

"SoyKote" provided enhanced UV performance water repellency for product packages that were exposed to outside weather conditions.  The demonstration consisted of pouring water on a plain piece of paper and showing how the water beaded up and did not penetrate through the coating.  Plaintiff's representative was also shown Defendant's new "state of the art" Italian printing press which was represented to provide "superior printing ability" for UV Inks.  It was represented to Plaintiff that the advantage that IRWIN-HODSON offered was the combination of true UV ink capabilities and the SoyKote coating which was stated to improve and enhance the performance and durability of the UV inks in all weather conditions.  Plaintiff's representative was very impressed by the demonstration and, based upon the representations made by Defendant's representatives as to the superior quality and durability of the UV inks and coatings for product packaging, Plaintiff determined to purchase Defendant's boxes for use in packaging Plaintiff's products.  Thereafter, between in or about late 2009 through the spring of 2011, Plaintiff and Defendant entered into a series of written contracts pursuant to which Defendant manufactured, sold and delivered to Plaintiff, at plaintiff's facility in Fairfield, California, boxes and packaging materials for use in packaging Plaintiff's plant foods, lawn foods, organic soils and soil amendments, among other products for sale to Plaintiff's customers.  The terms of the contracts between the parties for the sale of the boxes and packaging materials were set forth in commercial documents, including purchase orders, invoices, checks and cancelled checks and related documentation which identified the description, quantity, and price of the goods, and in verbal representations made by Defendant to Plaintiff.  Between late 2009 through the spring of 2011, Plaintiff paid in excess of $300,000 for boxes and packaging materials purchased from IRWIN-HODSON.

8.     The first order of boxes was shipped by Defendant to Plaintiff's Fairfield, California facility in late 2009.  Plaintiff began delivering products packaged in IRWIN-HODSON's UV boxes to its customers in the spring of 2010.   Very soon after shipping the first run of boxes, in or around the middle of March through April of 2010, Plaintiff's customers began reporting problems with defective glue on the side seams of the boxes; if the boxes were exposed to rain or water for a period of time, the main seam on the box would fail completely and the contents would spill.  After investigating customers' complaints throughout the summer and fall of 2010, Plaintiff confirmed

that the boxes and packaging materials were in fact defective and ultimately had no alternative but to offer substantial credits and reimbursements to its customers for the loss of the products due to the defective packaging, and new customer orders were significantly delayed. Plaintiff immediately brought the issue to the attention of IRWIN-HODSON. IRWIN-HODSON offered to print new boxes, and both parties agreed to address the issue by changing the glue used on the seam and by expanding the size of the glue strip on the side seam of the box. Defendant sent new shipments of boxes of several key SKUs. Upon running the replacement boxes through its packaging machine, Plaintiff discovered that the expanded glue strip created a new problem with the packaging equipment; the new boxes would fall out of the in-feed on the machine that filled the box. Defendant's representatives flew down from Portland to Plaintiff's facility to observe the problem, and after inspecting the equipment, fashioned a metal rod to attach to the machine to help hold the boxes in place and prevent them from falling out. Plaintiff then attempted to reverse the glue strip and move it to the other side of the box to see if that would resolve the issue, but that proved problematic as well, as the boxes did not feed into the machine correctly and Plaintiff ultimately had to run the boxes upside down in order for them to run properly.

9. Around this time, Defendant shipped approximately 10,000 boxes to Plaintiff at no charge to replace the boxes with side seam failures. Defendant also offered a reduced price on the boxes that had to be run upside down to compensate for the inconvenience. At this point, Plaintiff was experiencing very good durability from the coating in terms of UV and moisture performance, and Plaintiff was unable to find any other box vendors that offered the UV capability on the style of package Plaintiff utilized. Given Plaintiff's belief that Defendant had worked through and resolved the various packaging problems—i.e., glue issues and seam failures, proper sizing and position of the glue strip, etc.—and based upon the performance in the field of the UV print, Plaintiff determined to order its 2011 packaging products from IRWIN-HODSON in the summer of 2010.

10. When the third and final round of boxes began shipping in the spring of 2011, Plaintiff's customers immediately reported massive and widespread issues with the inks on the product packaging. Where boxes from earlier print runs had performed well in terms of the ink and the coatings, the new boxes printed in the summer of 2010 were now fading within a very short

period of time.  For example, the EB Store Rose & Flower box printed in the summer of 2010 experienced severe fading within 10 days of going onto displays.  The boxes would fade to almost white.  Nothing Plaintiff had experienced with the boxes previously delivered in 2010 would have provided any reason to expect the severe fading issues in the 2011 print runs.  In 2010, the problems had revolved around the integrity of the glue strip and not the ink.  In 2011, Plaintiff saw massive and widespread issues with the inks on the boxes shipped by Defendant.  Once again, Plaintiff was forced to offer substantial credits and reimbursements to its customers for the loss of the products due to the defective packaging, and experienced significant delays in shipping customer orders.  In some cases, Plaintiff was unable to ship any product to customers to meet their orders.  As a result, one of Plaintiff's largest customers threatened to terminate its longstanding relationship with Plaintiff.  Plaintiff also suffered significant injury to its brand and its business reputation as a result of the defective packaging of its products and its inability to meet customer orders.  When Plaintiff became aware of the issues with the inks and attempted to contact Defendant to address the problems, Plaintiff discovered that Defendant's key employee in dealing with Plaintiff's issues, Ken Kozel, was in the process of leaving the company, and that IRWIN-HODSON was exiting the entire packaging category and reevaluating its' business model.  In the summer of 2011, based upon the continuing problems with Defendant's products, Plaintiff moved production of its boxes and packaging materials to a new box manufacturer and printing company.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract)**

11.     Plaintiff realleges and incorporates paragraphs 1 through 10, inclusive, as though fully set forth herein.

12.     Plaintiff is a manufacturer and distributor of custom formulated plant foods, lawn foods, organic soils and soil amendments, among other products, from its manufacturing facilities located in Fairfield, California.  Plaintiff is informed and believes and based thereon alleges that at all relevant times herein mentioned, defendant IRWIN-HODSON was engaged in the business of, among other things, the manufacturing of boxes and other packaging materials for sale to, and use by commercial manufacturers in packaging their products for sale to consumers throughout the

United States.

13.     Between in or about late 2009 through the spring of 2011, Plaintiff and Defendant entered into a series of written contracts pursuant to which Defendant manufactured, sold and delivered to Plaintiff, at plaintiff's facility in Fairfield, California, boxes and packaging materials for use in packaging Plaintiff's plant foods, lawn foods, organic soils and soil amendments, among other products for sale to Plaintiff's customers.  The terms of the contracts between the parties for the sale of the boxes and packaging materials were set forth in commercial documents, including purchase orders, invoices, checks and cancelled checks and related documentation which identified the description, quantity, and price of the goods, and in verbal representations made by Defendant to Plaintiff.  Between late 2009 through the spring of 2011, Plaintiff purchased and paid in excess of $300,000 for boxes and packaging materials from IRWIN-HODSON.

14.     Under the express and implied terms of the contracts hereinabove alleged, Defendant agreed with Plaintiff, and expressly and impliedly warranted and represented to Plaintiff, that Defendant:

(a)     Would provide boxes and packaging materials with enhanced UV performance and water repellency for product packages when exposed to outside weather conditions;

(b)     Would provide boxes and packaging materials that conformed to Plaintiff's specifications, and that were of superior quality, and that would be suitable for use by Plaintiff in packaging and selling Plaintiff's products to its customers;

(c)     Would provide boxes and packaging materials that were free from defects in the components, including seams, seals and inks; and

(d)     Would guarantee the quality of materials and workmanship of its boxes as products of superior quality, and would make good any defects in the boxes and packaging materials or workmanship furnished by it.

15.     Plaintiff duly performed all terms, covenants, and conditions on its part to be performed under the contracts with Defendant.

16.     Defendant materially breached its contracts with Plaintiff by, among other things:

(a)     Failing to provide boxes and packaging materials with enhanced UV performance and water repellency for product packages when exposed to outside weather conditions, but rather providing boxes that experienced significant glue problems and seam failures, as well as severe fading of inks when exposed to outside weather conditions;

(b)     Failing to provide boxes and packaging materials that conformed to Plaintiff's specifications, but rather providing boxes that were defective and of inferior quality, and which were not suitable for use by Plaintiff in packaging and selling Plaintiff's products to its customers; and

(c)     Refusing to guarantee the quality of materials and workmanship of its products, including the quality of seams, seals and inks of its boxes, and refusing to make good the significant defects in the boxes and packaging materials furnished by it.

17.     As a direct and proximate result of the breaches above alleged, Plaintiff has suffered, and will continue to suffer damages including, without limitation (i) lost profits, (ii) the costs of the defective, unsalable packaging, (iii) the cost of reimbursements and credits to Plaintiff's customers for defective packaging, and (iv) injury to Plaintiff's brand and business reputation in a total amount to be determined at trial according to proof which Plaintiff reasonably estimates will be in excess of $300,000, plus interest.

**SECOND CLAIM FOR RELIEF**

**(Negligence)**

18.     Plaintiff realleges and incorporates paragraphs 1 through 17, inclusive, as though fully set forth herein.

19.     At all relevant times, Defendant owed Plaintiff a duty of care in the manufacture and printing of the boxes and packaging materials it was providing to Plaintiff to ensure that the boxes and packaging materials were manufactured in accordance with the standard of care employed by manufactures of good standing in Defendant's industry, and which were free from defects in the components, including seams, seals and inks, and otherwise complied with Plaintiff's specifications.

20.     Defendant breached its duty of care owed to Plaintiff and acted negligently in that

1  it shipped boxes and packaging materials to Plaintiff that were substandard, defective and of

2  inferior quality, failed to conform to Plaintiff's specifications and which were not suitable for use

3  by Plaintiff in packaging and selling Plaintiff's products to its customers.

4        21.    As a direct and proximate result of the negligence of Defendant, Plaintiff has

5  suffered, and will continue to suffer damages including, without limitation (i) lost profits, (ii) the

6  costs of the defective, unsalable packaging, (iii) the cost of reimbursements and credits to Plaintiff's

7  customers for defective packaging, and (iv) injury to Plaintiff's brand and business reputation in a

8  total amount to be determined at trial according to proof which Plaintiff reasonably estimates will

9  be in excess of $300,000, plus interest.

10  **THIRD CLAIM FOR RELIEF**

11  **(Breach of Implied Warranty of Merchantability-Commercial Code § 2314)**

12        22.    Plaintiff realleges and incorporates paragraphs 1 through 21, inclusive, as though

13  fully set forth herein.

14        23.    Defendant is a "merchant" in that it engaged in the business of, among other

15  things, the manufacture and printing of boxes and other packaging materials for sale to, and use by

16  commercial manufacturers in packaging their products for sale to consumers throughout the United

17  States.

18        24.    Between in or about late 2009 through the spring of 2011, Plaintiff and Defendant

19  entered into a series of written contracts pursuant to which Defendant manufactured, sold and

20  delivered to Plaintiff, at plaintiff's facility in Fairfield, California, boxes and packaging materials

21  for use in packaging Plaintiff's plant foods, lawn foods, organic soils and soil amendments, among

22  other products for sale to Plaintiff's customers.  The terms of the contracts between the parties for

23  the sale of the boxes and packaging materials were set forth in commercial documents, including

24  purchase orders, invoices, checks and cancelled checks and related documentation which identified

25  the description, quantity, and price of the goods, and which did not exclude or modify implied

26  warranties for the sale.

27        25.    Defendant breached the implied warranty of merchantability by delivering goods

28  to Plaintiff that were not merchantable; i.e., Defendant's boxes and packaging materials would not

1    pass without objection in the trade, and were not fit for the ordinary purpose for which such goods
2    are used, in that they were defective and of inferior quality and failed under normal use.

3         26.    As a direct and proximate result of Defendant's breach of implied warranty as
4    hereinabove alleged, Plaintiff has suffered, and will continue to suffer damages including, without
5    limitation (i) lost profits, (ii) the costs of the defective, unsalable packaging, (iii) the cost of
6    reimbursements and credits to plaintiff's customers for defective packaging, and (iv) injury to
7    Plaintiff's brand and business reputation in a total amount to be determined at trial according to
8    proof which Plaintiff reasonably estimates will be in excess of $300,000, plus interest.

9    **<u>FOURTH CLAIM FOR RELIEF</u>**
10   **(Breach of Implied Warranty of Fitness for Particular Purpose-Commercial Code § 2315)**

11        27.    Plaintiff realleges and incorporates paragraphs 1 through 26, inclusive, as though
12   fully set forth herein.

13        28.    Defendant is a "merchant" in that it engaged in the business of, among other
14   things, the manufacture and printing of boxes and other packaging materials for sale to, and use by
15   commercial manufacturers in packaging their products for sale to consumers throughout the United
16   States.

17        29.    Between in or about late 2009 through the spring of 2011, Plaintiff and Defendant
18   entered into a series of written contracts pursuant to which Defendant manufactured, sold and
19   delivered to Plaintiff, at plaintiff's facility in Fairfield, California, boxes and packaging materials as
20   hereinabove alleged.  The terms of the contracts between the parties for the sale of the boxes and
21   packaging materials were set forth in commercial documents, including purchase orders, invoices,
22   checks and cancelled checks and related documentation which identified the description, quantity,
23   and price of the goods, and which did not exclude or modify implied warranties for the sale.  At the
24   time of the sale, Defendant was aware that Plaintiff was purchasing the boxes and packaging
25   materials for use in packaging Plaintiff's plant foods, lawn foods, organic soils and soil
26   amendments, among other products for sale to Plaintiff's customers, and that Plaintiff was relying
27   on the judgment of Defendant in delivering boxes and packaging materials that were fit for such
28   purposes.

30.     Defendant breached the implied warranty of fitness for the particular purpose by delivering goods to Plaintiff that were not merchantable; i.e., Defendant's boxes and packaging materials would not pass without objection in the trade and were not fit for the ordinary purpose for which such goods are used, in that they were defective and of inferior quality and failed under normal use.

31.     As a direct and proximate result of Defendant's breach of implied warranty as hereinabove alleged, Plaintiff has suffered, and will continue to suffer damages including, without limitation (i) lost profits, (ii) the costs of the defective, unsalable packaging, (iii) the cost of reimbursements and credits to Plaintiff's customers for defective packaging, and (iv) injury to Plaintiff's brand and business reputation in a total amount to be determined at trial according to proof which Plaintiff reasonably estimates will be in excess of $300,000, plus interest.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

32.     Plaintiff realleges and incorporates paragraphs 1 through 31, inclusive, as though fully set forth herein.

33.     Plaintiff is a manufacturer and distributor of custom formulated plant foods, lawn foods, organic soils and soil amendments, among other products, from its manufacturing facilities located in Fairfield, California.  Plaintiff is informed and believes and based thereon alleges that at all relevant times herein mentioned, defendant IRWIN-HODSON was engaged in the business of, among other things, the manufacturing of boxes and other packaging materials for sale to, and use by commercial manufacturers in packaging their products for sale to consumers throughout the United States.

34.     Between in or about late 2009 through the spring of 2011, Plaintiff and Defendant entered into a series of written contracts pursuant to which Defendant manufactured, sold and delivered to Plaintiff, at plaintiff's facility in Fairfield, California, boxes and packaging materials for use in packaging Plaintiff's plant foods, lawn foods, organic soils and soil amendments, among other products for sale to Plaintiff's customers.  The terms of the contracts between the parties for the sale of the boxes and packaging materials were set forth in commercial documents, including

purchase orders, invoices, checks and cancelled checks and related documentation which identified the description, quantity, and price of the goods, and in verbal representations made by Defendant to Plaintiff.  Between late 2009 through the spring of 2011, Plaintiff paid in excess of $300,000 for boxes and packaging materials purchased from IRWIN-HODSON.

35.    In connection with the contracts described above, and with the intent to induce Plaintiff to enter into said contracts, and with knowledge of Plaintiff's specific intention to use Defendant's boxes and packaging materials for packaging Plaintiff's plant foods, lawn foods, organic soils and soil amendments, among other products for sale to Plaintiff's customers, Defendant made express and implied representations to Plaintiff that Defendant:

(a)    Would provide boxes and packaging materials with enhanced UV performance and water repellency for product packages when exposed to outside weather conditions;

(b)    Would provide boxes and packaging materials that conformed to Plaintiff's specifications, and that were of superior quality and that would be suitable for use by Plaintiff in packaging and selling Plaintiff's products to its customers; and

(c)    Would provide boxes and packaging materials that were free from defects in the components, including defects in the seams, seals and inks.

36.    The representations made by Defendant were in fact false in that:

(a)    The boxes and packaging materials provided by Defendant did not have enhanced UV performance and water repellency for product packages when exposed to outside weather conditions, but rather suffered from significant glue problems and seam failures, as well as severe fading of inks when exposed to outside weather conditions; and

(b)    The boxes and packaging materials provided by Defendant did not conform to Plaintiff's specifications, but rather were defective in their components, including seams, seals and inks, were of inferior quality, and were not suitable for use by Plaintiff in packaging and selling Plaintiff's products to its customers.

37.    At the time Defendant made these representations it had no reasonable basis for believing them to be true.

38.    At the time these representations were made by Defendant, and at the time Plaintiff

1  entered into the contracts, Plaintiff was ignorant of the falsity of Defendant's representations and

2  believed them to be true.  In reliance on these representations, Plaintiff was induced to, and did in

3  fact, enter into the contracts as hereinabove alleged.  Had plaintiff known Defendant's

4  representations were false, Plaintiff would not have entered into the contracts and would not have

5  purchased the boxes and packaging materials from Defendant.  Plaintiff's reliance on Defendant's

6  representations was justifiable in that Defendant was at all times in the most favorable position to

7  ascertain the truth or falsity of said representations.

8         39.    As a direct and proximate result of Defendant's negligent misrepresentations as

9  hereinabove alleged, Plaintiff has suffered, and will continue to suffer damages including, without

10  limitation (i) lost profits, (ii) the costs of the defective, unsalable packaging, (iii) the cost of

11  reimbursements and credits to Plaintiff's customers for defective packaging, and (iv) injury to

12  Plaintiff's brand and business reputation in a total amount to be determined at trial according to

13  proof which Plaintiff reasonably estimates will be in excess of $300,000, plus interest.

14                          **SIXTH CLAIM FOR RELIEF**

15        **(Implied Contractual and Equitable Indemnity; Declaratory Relief)**

16        40.    Plaintiff realleges and incorporates paragraphs 1 through 39, inclusive, as though

17  fully set forth herein.

18        41.    Plaintiff alleges that in connection with the matters hereinabove set forth, Plaintiff

19  entered into agreements, express and/or implied, wherein Defendant agreed to indemnify and hold

20  Plaintiff harmless from and against any liability or losses in connection with any demand or claim

21  asserted against Plaintiff by third parties for reimbursement of losses attributable to the acts or

22  omissions of Defendant as hereinabove alleged.  Plaintiff also contends that by virtue of the implied

23  right of indemnification by operation of law, and/or by equitable right of indemnification under

24  principles of fair play and substantial justice, Defendant is obligated to fully indemnify Plaintiff

25  from and against any liability or losses in connection with any demand or claim asserted by third

26  parties for reimbursement of losses attributable to the acts or omissions of Defendant as

27  hereinabove alleged.

28        42.    An actual controversy now exists in that Plaintiff contends that it is entitled to

1  indemnification from Defendants from and against any liability or losses as hereinabove alleged,

2  and Defendant disputes said contention.  Plaintiff desires a judicial determination and declaration of

3  the parties' respective rights and duties relative to the conflicting claims.  A judicial declaration is

4  necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain

5  its rights and obtain a fair and just adjudication of the dispute.

6  **PRAYER FOR RELIEF**

7  WHEREFORE, plaintiff prays for judgment against Defendant as follows:

8  1.    For damages, including compensatory, consequential and incidental damages, in

9  an amount according to proof;

10  2.    For pre-judgment interest at the legal rate;

11  3.    For a judicial declaration that Defendant is obligated to indemnify Plaintiff from

12  and against any liability or losses in connection with any demand or claim asserted by third parties

13  for reimbursement of losses attributable to the acts or omissions of Defendant as hereinabove

14  alleged;

15  4.    For costs of suit herein incurred; and

16  5.    For such other and further relief as the court may deem just and proper.

17

18  Dated: February 28, 2013    LAW OFFICES OF
                               CHRISTOPHER W. SWEENEY

19

20                                    /s/ Christopher W. Sweeney
                               By: _____

21                                    Christopher W. Sweeney
                                      Attorney for Plaintiff
22 //                                 E.B. STONE & SON, INC.

23 //

24 //

25 //

26 //

27 //

28 //

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: February 28, 2013    LAW OFFICES OF
CHRISTOPHER W. SWEENEY


                                            /s/ Christopher W. Sweeney
                            By: _____
                                 Christopher W. Sweeney
                                 Attorney for Plaintiff
                                 E.B. STONE & SON, INC.